Good morning, Your Honor. Richard Aroyake for the petitioner. May it please the Court. The petitioner here challenges the I.J.'s determination, one, that he had not filed his asylum application within one year of arriving in the United States. Petitioner is of the opinion that the I.J. erred because he had previously admitted the allegations set forth in the notice to appear, alleging that he entered on the date he claimed to have entered, and therefore the facts as of his date of entry were no longer in dispute on the date of the merits hearing. Are you saying that the government admitted that that was the date of his entry? That's correct, Your Honor. Where did the government do that? If you look on the notice to appear at the actual notice to appear, or if you look at the record, at page 104, 105, and also at 123, that's the notice to appear. It alleges that the respondent entered on August 22, 2002, and that he entered at San Ysidro, California. That's just an allegation, right? Yes, but when the respondent appeared before the immigration judge on June 1, 2005, he admitted those allegations. And that matter is therefore settled according to this Court's holding in at least two cases, Sinopi and Beholder. For example, in 2009, that's 567F3-1067. 567F3-1067, that was in 2009. In 2008, this Court held that the I.J. erred in determining that the application was time-barred in another matter, Hakopian v. Mukasey, which is 551F3-843-847 in 2008. So let me ask you this. So is the I.J. stuck with those quote, unquote, admissions? Yes, the I.J. is. The reasoning behind that is the asylum office is the first. The regulations authorizes either the asylum officer or the immigration judge or the BIA to settle the one-year issue. The asylum office in this case settled the one-year issue. The supervising asylum officer signed the notice to appear, alleging that the alien arrived on August 22, 2002. When he came before the immigration judge and the alien admitted those allegations, nobody raised an objection at that point. The government did not seek to amend the notice to appear or submit an I-261. Now, this argument that you're just laying out right now, did you raise that in your blue brief? Unfortunately, I did not brief this case, so I could not have raised this argument. I thought that I had read the brief, but we have several same-related briefs. I did read the brief, Your Honor. But I mean, I read it. I don't remember seeing this particular argument. No, it wasn't there. But nevertheless, it's an argument that is worth making. But was it raised to the BIA? Well, certainly, you know. This particular argument was not raised before the BIA. It wasn't raised to the BIA and it wasn't raised before us, but the record shows what you're telling us. That's correct. And I would also point out that this case was decided both at the BIA and immigration judge long before the case cited here in 2008 and 2009. So this particular argument could not have been raised before the BIA, Your Honor. Well, but the immigration judge found, based on credibility determinations, that he or she did not believe the testimony regarding the August date of entry into the United States, and immigration judge Geis instead found that the whole version of events regarding his either being in hiding or not being in hiding and living with the family or not living with the family made his testimony incredible and found that he had not demonstrated that he had entered, that he had filed his petition within a year. The judge made specific findings that your client had not met the one-year bar. Correct? That is correct. However, the immigration judge, in the alternative, conceded that the petitioner met the one-year bar and then proceeded to analyze the credibility of the petitioner. Exactly. In the alternative. In the alternative. Now, as far as the immigration judge is concerned with the applicant's narrative regarding when and how he left India and when he entered the United States, there was never any dispute as to when he left India. Nobody ever suggested he didn't leave India on July 14th, 2002, for example. They only had a problem because he could not account for the number of days between July 14th and August 22nd when he claimed to have entered the United States. The problem was either Guatemala to Mexico or Mexico to the United States. Nobody ever argued that he didn't leave India on July 14th. The asylum application was filed in December of 2002. So as I understood, as I understand what the I.J. did was he, as Judge O'Grady said, he determined that Mr. Singh was not credible, that he lacked, you know, that his testimony was just not believable. And so he was not going to accept anything he had to say about when either he left India or when he arrived in the United States. It just was no factual foundation to support his testimony. And there were no other objective documents that were presented to support his. So the I.J. said, you know, you just haven't presented clear and convincing evidence as to when you entered the country. There is the alleged inconsistencies the I.J. relied on for her credibility determination actually do not support her adverse credibility determination. There are several instances. Well, some of them are a little shaky, but Judge O'Grady again pointed out one that was pretty significant, wasn't it? When he, when, what was he doing in his village? You know, he says he went to his, he tested, in his application he said one thing, at the hearing he said another thing, and then he clarified himself. And it's, you know, it's hard to make heads or tails out of that. We're talking about an individual with practically no education here. He's a farmer, has not had to rely on his, probably we don't know how he's with dates. Obviously, the record indicates he has a lot of trouble when it comes to dates and the timing of events. The applicant in this case testified that he went into hiding in Rajasthan. He was very obviously confused at times, but he always cleared that up. And during the hearing, he did rehabilitate his own testimony by correcting both the I.J. and the government's attorney that he was, in fact, in Ganga Nagar and in Rajasthan, rather than in Jalandhar with his family, because he indicated that's where he went. And from there he went to Delhi and then came to the United States. The confusion as to What did he say in his application? In his application It was a fairly detailed application. Yes. In his application he stated that he went to Ganga Nagar and lived there from July, from August of 2001 until July of 2002 when he left India, when he went to Delhi and left India. The confusion when it comes to that aspect of his testimony could be attributed to the nature of the questions asked. When he was asked initially what he did after he was released from police custody in 2001, he said he went into hiding. And then the government asked him, did you go into hiding at home? And he stated yes. And this is where the confusion started. And nobody attempted to correct that until it was brought up later on. Well, your application said you were in Ganga Nagar and you were saying you were at home. He didn't actually say Jalandhar. He said he was in hiding at home with his family. That's what he stated. So there was a lot of confusion in this case. And the confusion just built and built. If you read the transcript, which is not very the record, which is not very long, you will see that there are instances where some of the confusion were created by the questions asked. And this is an uneducated individual. Okay. You're out of time, but I'll give you a minute for rebuttal. Thank you. We'll hear from the government. Good morning, Your Honors. Regan Hildebrand on behalf of the Attorney General. Your Honors, this is a case about adverse credibility. It's about an individual when questioned by both his own attorney      And this is a case about adverse credibility. repeatedly changed his story about his alleged harm in India, thereby giving the immigration judge specific reasons to find him to be adversely credible. For this reason, the Attorney General requests this court today to dismiss Mr. Singh's petition for review because the adverse credibility determination is supported by substantial evidence in the record. Regarding Mr. Singh's asylum application, the one you're filing, the government has two points today on that. First off, Mr. Singh has pointed to the Sanapian case to hold that when the government alleges an entry date and the notice to appear, and the alien admits to that date, the parties are essentially bound by that as a judicial mission. And that is true under this court's case law. It's based off the Hakopian decision, which is founded of 551 F. 3rd, 843. However, this court has subsequently modified that decision in Cortez Pineda, which is 610 F. 3rd, 1118, where Judge Gould wrote, quote, Hakopian did not establish a blanket rule that facts alleged in the notice to appear, if amended before the immigration judge, bind the court and the parties. We made explicitly clear in Hakopian that an entry date alleged in a notice to appear might not bind the immigration judge if the notice to appear is amended, or if, as here, the entry date is subsequently contested, end quote. This is found on page 1122. And in Cortez Pineda, the court found that the notice to appear entry date did not bind the parties because, first off, the alien only established his entry date through testimony at the removal proceedings. And, secondly, the government contested at those hearings the entry date itself. And that's exactly what happened in this case. Mr. Singh only tried to establish his entry date based upon his direct testimony. He did not rely on the notice to appear. This is very clear at page 136 and 139 of the administrative record, where his attorney said to him, quote, Mr. Singh, before we start questioning about your asylum claim, this court would like to know if whether you prepared your application with one year of your arrival in the United States. Mr. Singh said yes. His counsel followed. Can you tell us when you entered the United States? Mr. Singh said August 22, year 2002. He then established through testimony that he left India, traveled to Frankfurt, went to Guatemala, went to Mexico, and then arrived in the United States. On cross-examination, the government directly challenged Mr. Singh regarding his entry date. First off, the government questioned Mr. Singh about his whereabouts from 2001 to 2002, wanting to know where he was after he was released from custody. But more importantly, the government counsel asked Mr. Singh repeated questions about his entry into the United States. He noticed that Mr. Singh had claimed that he had arrived in Tijuana, and yet when he asked Mr. Singh how he arrived in Tijuana, he couldn't explain if he arrived there by bus, by car, or by train. And then when he asked him about the time discrepancy with his date of entry, Mr. Singh again had no explanation. As the government counsel noted, by my calculation, sir, if you left India on July 15th or July 14th, by the timeline that you've given us today, that puts you in the United States on July 27th, not August 22nd. Mr. Singh said yes. Government counsel followed up. Well, can you explain the difference? Mr. Singh had no response. His reply was basically the time from going from over here to there is different, end quote. And this is found from pages 146 to 147. Here, Your Honors, because Mr. Singh was only relying on his testimony to establish his date of entry, and because the government directly challenged that, the Hacopian decision does not bind the government, and that therefore the immigration judge properly found that Mr. Singh's date of arrival in the United States was not clearly established through clear and convincing evidence, and therefore there were considerable doubts as to whether he timely filed his asylum application. Could I ask you just a legal question for a minute? Yes, Your Honor. I'm trying to figure out with respect to whether we have jurisdiction to review the IJ's one-year time bar ruling. So here it's rested on – he rests his decision on adverse credibility, correct? That's correct, Your Honor. So under – there is a claim here for withholding of removal and cat relief. That's correct. Correct. So clearly under – there's no limitation on our jurisdiction to review the Board's rulings on those issues, correct? No, Your Honor. So if in reviewing the adverse credibility determination with respect to withholding, we were – let's just assume for a minute. I want to think this through for – and you can help me. If we were to conclude that the adverse credibility ruling is not supported by substantial evidence, what does that do with respect to the one-year time bar issue? Does it wash over to the – to the IJ's? Well, that's my second point, Your Honor, regarding the one-year time issue. If the Court were to find jurisdiction over that, Mr. Singh would still lose because of the adverse credibility determination that this Court has recently confirmed in the Yan Lee case, which was published a few weeks ago, that the alien has the ultimate burden of establishing eligibility for asylum by giving credible evidence. So if you find that his – you have jurisdiction over the asylum application and that he did file in that one-year time period, he still loses. But if you were to find that the adverse credibility determination is not supported by substantial evidence, in that situation, the proper course in the hypothetical would be for the Court to remand because then the agency made no finding regarding Mr. Singh's asylum application on the merits itself. But I guess my – maybe my question wasn't clear. So suppose – suppose that on the asylum claim – or suppose there's – he abandons withholding a removal. All we have is asylum and the one-year time bar ruling and an adverse credibility determination. Do you think we have jurisdiction to review in that context the adverse credibility ruling? Assuming that – Assuming there's no – that he abandons any claim for withholding and all in front of us is an asylum claim with an adverse credibility ruling regarding the one-year time bar issue. Assuming that the entry date were not contested and – Well, the result of the adverse credibility finding says I don't believe anything you have to say about when you entered the country. He would – he would still lose your honor in that situation because Mr. Singh relied on the same evidence to establish both his claim for withholding or removal. No, no, no. You're not following me. I just – I want to know to what extent – listen carefully. So forget anything about withholding. It just doesn't exist. All we have is asylum. I.J., listen to the claimant's testimony. Say, I don't believe anything you're saying. Here's reason one, two, three, four, and five. Okay? So I find you not credible, so I don't believe anything about this one-year business when you entered the country. Therefore, you haven't presented any evidence. You're barred by that. You're just – you have no claim for asylum. Under the jurisdictional limitation reviewing the one-year time bar ruling, would we have – could we look at the adverse credibility ruling in that context? In that context, assuming jurisdictional asylum claim, you could, but Mr. Singh would still lose on that point because in trying to establish his – in filing his asylum application, he relied on the same evidence that the immigration judge considered for withholding or removal and cap protection. So if substantial evidence supports the adverse credibility finding, Mr. Singh still cannot establish the threshold credibility needed for asylum. But if he – but if this – so then your position is, I gather, that if the adverse – if it's – if the one-year time bar ruling is based on an adverse credibility determination and we were to decide that the adverse credibility determination is not supported by substantial evidence, then that would essentially wash over onto the one-year time bar ruling and it would have to go back to the BIA for them to go through the analysis unless they did it – unless they did an alternative ruling such as here. Hypothetically, Your Honor, in this case, though, that doesn't apply, where because Mr. Singh relied on the same evidence to establish his eligibility for asylum withholding and cap, a remand would be futile. If the adverse credibility finding is supported by substantial evidence, and it very clearly is based on the number of inconsistencies that the IJ pointed out, there would be no need for this Court to remand back to the IJ regarding an asylum determination. Right. I understand that. Regarding my second point, Your Honor, since my time is up. Let me ask you one other question that I have with respect to cap relief. So he had additional evidence regarding cap relief other than his own testimony. There was one letter in the record, Your Honor, from Dr. Puri, who allegedly examined Mr. Singh after one of his release from prison. The problem with that letter was that it doesn't provide independent evidence in the sense that the doctor did not make an independent observation. The doctor only reported what Mr. Singh had told him. And I quote from the letter at page 276 that Mr. Singh came to me on 22-5-98. He was in semi-conscious condition. He was unable to walk. He was having a swollen face. He had external and internal injuries. As he told me, he got these injuries from police torture, end quote. That was the only evidence he had based upon what Mr. Singh had told the doctor, and that was the problem the immigration judge had regarding that evidence to establish that he had possibly been tortured in India. Since I'm out of time, Your Honor, do you have any more questions? Then the government rests on its submission to this brief regarding the adverse credibility determination. Okay. Thank you. Thank you, Your Honor. I'll give you a minute for rebuttal. Thank you, Your Honor. May it please the Court. The Petitioner in this case is a man with practically no education. He was confused a lot during testimony. There's evidence in the record when he's asked simple things about, for example, in the very beginning his friend was sitting in the courtroom when the judge asked him, this person is not a friend of yours? And he said, the one sitting behind, he said, yes. He says, is this man a friend of yours? He said, no. Something that simple confuses this man. This adverse credibility determination that the immigration judge made is based on testimony that seemed confused if you take the position that this guy is not credible. But if you consider the fact of his limited education, his cultural background, and the fact that he was in a very nervous situation testifying before an immigration judge, it is reasonable to understand why this Petitioner was so confused while he was testifying. And it never varied from his testimony as to what happens to him when the police arrested him four times. Okay. Thank you. Thank you. The matter is submitted.
judges: O'grady, Goodwin, Paez